## STACKPOLE & al. *versus* CURTIS.

The grant of a "mill site" conveys a water power, together with the right to maintain a dam wherever such dam would be suitable for the convenient and beneficial appropriation of the water power.

To establish a prescriptive right of flowing water by a dam for the use of a mill, it is not necessary that the dam should have been maintained, for the whole period, upon the *same spot;* it is sufficient, if shown to have been maintained upon the *same mill site*, though removed, from time to time, to *different places* upon such *site*.

PROCESS to recover damage for flowing the complainants' land by a mill-dam. The respondent pleaded by brief statement, that he and those under whom he claims, had, for more than twenty years, maintained a dam upon the same "*place*," upon which stands the dam now complained of, to as great a height, &c.

Evidence upon that question was submitted to the jury.

The facts proved, so far as necessary to be presented, appear in the opinion given by the court.

SHEPLEY, C. J. instructed the jury that, if the respondent's dam was erected upon the same *site*, of the ancient dam, (and

if, in other respects, the prescription was maintained,) the defence was established.

The verdict was for the respondent.    The complainants excepted.

*J. Shepley*, for the complainants.    The pleading was, that the dam was erected upon the same *place* of the ancient dam. This allegation it was incumbent upon the respondent to prove. 1 Greenl. Ev. § 58, 63, 69, 71 ; 2 Greenl. Ev. § 539 ; 2 Stark. Ev. (Boston ed. in 2 vols.) 667 ; 3 Kent, 547.

The right acquired by prescription extends no further than to the extent of the user, out of which the right springs.

The instruction to the jury was, that the respondent is protected, if his dam was, (not upon the same *place*, but,) upon the same *site* of the ancient one.    The word " *site*" is of broader import than the word " *place*."    It gave to the respondent a protection, though his present dam may be at a great distance from the former one.    We submit that this ruling was erroneous.

*Bourne*, for the respondent, cited 1 Dane's Ab. 529 ; *Richards* v. *Squibb*, 2 Esp. 26 ; *Cottel* v. *Luttrel*, 4 Co. 86 ; *King* v. *Tiffany*, 9 Conn. 167 ; Angell on Water Courses, 170 ; *Cooper* v. *Barker*, 3 Taunt. 99 ; *Cary* v. *Daniels*, 8 Metc. 467 ; *Branch* v. *Doane*, — Conn. 402 ; *Buddington* v. *Bradley*, 16 Conn. 213 ; *Bealy* v. *Shaw*, 6 East, 208 ; *Davis* v. *Brigham*, 29 Maine, 402 ; *Hatch* v. *Dwight*, 17 Mass. 269 ; 15 Johns. 213, *per* THOMPSON, C. J. ; 13 Johns. 212, *per* PLATT, J.

There was also a motion for a new trial : —

1. Because the verdict was against the evidence given on the trial.

2. Because the verdict was not only without any evidence to support it, but was contrary to and against the uncontradicted evidence, introduced by the respondent himself at the trial.

3. Because the verdict was against the weight of evidence.

4. Because the verdict was against law.

5. Because the verdict was against the law, as stated to the jury by the presiding Judge at the trial.

SHEPLEY, C. J. — The defence presented was a prescriptive right to flow the lands of the complainants. The mill-dam and saw-mill of the respondent were not erected at the same place, where a former mill-dam and saw-mill owned by Jeremiah Bettes had been erected, by the use of which the prescriptive right was alleged to have been acquired.

The respondent's mill and dam had been erected on land formerly owned by Bettes at a place, where Bettes had for many years maintained another dam and a grain-mill thirty-one and a half rods below his saw-mill.

The jury were instructed that it was necessary to maintain the prescription, that the respondent's " mill and dam should be on the same *site* with the preceding Bettes dam and mill." " If on the same *site*, and the prescription was otherwise maintained, their verdict should be for the respondent."

The cases cited by the counsel for the respondent show, that the word "site" is used in judicial proceedings, when mills and water rights are spoken of, as comprehending a fall of water suitable for the erection and use of mill-dams and mills. Such a fall of water being denominated a mill site, or mill seat. The use of the word in this sense is believed to be so common, that the jury probably understood, that the word was used ·in the instructions in this sense.

If used in this sense it is insisted, that the instructions were erroneous. That the brief statement of the respondent alleges, that the right to flow was " conveyed to the then owners of the dam and mill, then standing on the same place ;" and that the prescription must be proved as alleged.

The grant is alleged to have been made to the owners of a mill standing on the same place as the present mill. It is not alleged, that they were by the grant restricted to the use of the water at one particular place. Nor is it alleged that the grant was to flow by a dam standing at a particular place. If a.

grant be made to a person owning a dam and mill erected at a particular place of a right to flow the lands of the grantor, the grantee is not necessarily restricted to the use of the water at the precise place, where it was used, when the grant was made. When the grant is made to the owner of a mill without words of limitation or restriction, the intention of the parties and the true construction of the grant must be ascertained from the language used and the circumstances or facts existing, when the grant was made. The grantor would understand, *that* the grantee desired to have the full use of the water for his mill and privilege without being subject to the payment of damages for any injury occasioned by the flowing of the water upon the adjoining lands; *that* the existing dam and mill might decay; *that* others might be erected; *that* the grantee might be expected to erect them on the mill site then used, on the place most convenient and useful. He could not be expected to anticipate, that the grantee would erect a dam and mill on a different mill site and claim a right to flow the water for the use of such a mill.

It would be reasonable to conclude, that it was the intention of the parties, that the grantee might cause the water to be flowed upon the lands of the grantor to the extent of the grant for the use of mills upon that mill site at any place most convenient and useful.

If the right to use the water in this case be regarded as acquired by the exercise of rights, adverse to those of the owner of the land, the person, who caused the water to be flowed, cannot be supposed to have asserted a right more restricted than he would have obtained by an unrestricted grant. He should be regarded as asserting a right co-extensive with his necessities. It being necessary for the profitable use of his water-fall or water power to cause the water to flow upon the lands of others, the just inference is, that he asserted the right to flow, to enable him to make use of that water-fall or water power.

It accordingly appears from the cases cited, as well as from

Stackpole *v.* Curtis.

other decided cases, that a prescriptive right to cause water to be flowed, has not been regarded as appurtenant to a mill· or dam erected in one particular place on a water-fall, but as appurtenant to the water privileges or water power, which cannot be used without occasioning the water to be flowed.

If one grant to the owner of a water-fall the right to flow his lands to a certain extent, it cannot be material to him, whether the flowing be occasioned by a dam erected some rods higher or lower upon that water-fall.

Prescription being founded upon the presumption of grant, should be regulated by such a construction as the grant would receive.

The counsel for the complainants contend, that the testimony proved, that there were two separate and distinct mill sites. One used for the grain-mill and dam, which could be, and was used without causing the water to flow upon the adjoining lands ; and another used for the saw-mill and dam, which was not used without causing the water to flow upon the adjoining lands to some extent. Such does appear to have been the state of facts, while both those mills were used. It is also true, that both were owned by the same person, the grain-mill being used only when it could be by water first used for the saw-mill.

The jury might be authorized by the testimony to conclude, that the grain-mill could not be used to advantage, if the water had not been flowed and preserved by the dam erected at the saw-mill. The grain-mill would then become dependent upon the flow of the water for its profitable use, and the water privilege would become substantially one, although used for the working of different kinds of mills.

There may be several mills upon one water-fall or mill site, all deriving their motive power from the same head of water, while the water is used for some of them upon a lower level than for others.

The grain-mill appears in this case to have been removed, because it was of little or no value. This, with other testi-

mony, might induce the jury to conclude, that there was but one mill site or place for a mill upon that water fall; and that water for the working of one mill only could be supplied by the stream.

The language used in some of the deeds of conveyance speaks of "mill privileges," "Fletcher's mills" and "Fletcher's two saw-mills," but this language has reference in part to another ancient saw-mill, which once existed further down the stream than the grain-mill; and it does not materially affect the question submitted to the jury, whether the existing saw-mill and dam were erected upon the same site as the former saw-mill and dam owned by Bettes.

Under such circumstances the court does not perceive, that the jury must have acted under some improper bias or influence in coming to their conclusion.

*Exceptions and motion overruled.*