### DANIEL CURTISS vs. NATHANIEL B. SMITH.

The flowage act (Gen. Statutes, tit. 1, sec. 390,) provides that no dam shall be erected under its provisions to the injury of any mill-site on the same stream, on which a mill-dam shall have been lawfully erected and used, "unless the right to maintain a mill on such mill-site *shall have been lost or defeated by abandonment or otherwise.*" Held that the statute by these terms did not intend a literal loss of the right to use such mill-site, but only such a neglect to use it on the part of the owner as showed that he had no intention of improving it again for milling purposes.

PETITION under the flowage act by the owner of an existing mill, for the privilege of raising his dam and flowing the lands of the respondent. The respondent in his answer, in addition to a general denial, averred "that, at the time of said complaint, and long before, and ever since, the respondent hath been, and was, and is the owner of a mill-site on the same stream and above the said mill of the petitioner, on which mill-site of the respondent a mill and mill-dam have been lawfully erected and used, and the right to maintain which has not been lost or defeated by abandonment or otherwise; and that the raising of the petitioner's dam in the manner prayed for in said petition, is and will be to the injury of the respondent's said mill-site."

The committee, to whom the petition was referred under the statute, made a report, fixing the increased height of the

dam, and assessing the damages of the respondent; with the following finding with regard to the mill-site of the respondent:

"And we further find that, as early as the year 1683, there was an occupied mill site situate upon the land now owned by the respondent, above the mill-site now occupied by the petitioner, and on the same stream, and that the raising of said dam, as set forth in this report, would set the water back nearly to the point where it is apparent that a dam anciently existed across said stream and on the land of the respondent, but that said ancient mill-site has not been occupied, nor has such dam existed, for more than one hundred and fifty years, and that the respondent has never claimed of the petitioner, or of any of his grantors, that any such mill-site was owned by him or that any such existed. And we further find that the present mill-site and water-power on said stream owned and occupied by the petitioner and used as a propelling power for said grist-mill, saw-mill and factory set forth in said petition, has been used and occupied by the petitioner and his grantors, at the place where said mills and factory are now located, for a period of more than one hundred years."

The respondent objected to the acceptance of the report, and especially to a decree in favor of the petitioner upon the report if it should be accepted, and the Superior Court reserved the questions arising upon the report for the advice of this court.

*Cothren*, for the petitioner.

*O. S. Seymour*, for the respondent.

PARK, J. This case depends upon the construction to be given to the 390th section of title 1st, Revised Statutes, p. 90, which is a part of the enactment known as the Flowage Act, and is as follows: " No such dam shall be erected to the injury of any mill, lawfully existing either above or below it, on the same stream, or to the injury of any mill-site on the same stream on which a mill or mill-dam shall have been lawfully

erected and used, unless the right to maintain a mill on such last mentioned site shall have been lost or defeated by abandonment or otherwise." It appears from the finding of the committee that a mill and mill-dam once stood upon the land of the respondent, the site of which will be injured by the raising of the petitioner's dam, but for a period of more than one hundred and fifty years no such erections have existed; and the question is, whether, in the language of the statute, the right of the respondent to maintain a mill upon the site of the ancient one has been lost or defeated by abandonment or otherwise. The difficulty in the case seems to be in ascertaining in what sense the legislature intended to be understood by the language used. If we construe it literally it is difficult to see how a person who owns a mill-site could in any case lose the right to maintain a mill on it by abandonment or otherwise. A mill-site comprehends, not only the site of the mill-building, but also the water-power connected therewith for milling purposes. Now inasmuch as a party has absolute dominion over his own property, subject only to the right of eminent domain on the part of the government, in what sense can it be said that by abandonment or otherwise he can lose the right to maintain a mill upon a mill-site that he owns? If the right is lost, where has it gone? If another has acquired it, by prescription or otherwise, that person is now the owner, and these proceedings should be brought against him, when the same question would arise.

It was suggested in the argument that the statute would apply in a case where a party had acquired the right to flow another's land by prescription, and had lost it by non-user. But it is easy to see, if the statutory right means the right incident to ownership, it is not lost in the case supposed. The right attaches to the site itself, and rests in the person who may be the owner for the time being. Whether it is owned by one or many persons, jointly or severally, the right to maintain a mill thereon still exists. The several owners may each convey the part he owns to a third person, and then manifestly the right incident to ownership would be revived, if it could be regarded as lost or defeated by a severance of the

title to the mill-site.   But the right mentioned in the statute, when once lost or defeated, is gone forever.   Another right may be acquired by the erection of another mill or mill-dam, before the site is taken by another under the statute, but the old right has ceased to exist.   Consequently the right incident to ownership can not be lost or defeated, in the statutory sense, by a several ownership in the line of conveyance.   If the owner of a mill-site loses the right to flow another's land by non-user, he loses but a part of the site, and that part reverts to the owner of the land flowed, and they together still own the mill-site, and possess the right incident to ownership to maintain a mill thereon.

What interpretation then should be given to the statute, for it is to be presumed that there are cases to which its provisions can be applied.

The old law on the subject excluded all mill-sites from the operation of the statute, whether a mill or mill-dam had been erected and used thereon or not.   That exclusion was deemed to be too extensive in its operation and therefore the present statute was enacted.   The right to maintain a mill, mentioned in this statute, must differ essentially from that incident to ownership.

The right incident to ownership does not depend upon whether a mill or mill-dam has ever existed upon a mill-site, in order to confer upon the owner the privilege of maintaining a mill thereon, but this statutory right does.

This statute unmistakably shows a desire and intention on the part of the legislature, that all the water-power of the state shall be improved by somebody for milling purposes. A preference is shown for the owner, and if it appears in a given case that a mill or mill-dam has been erected and used upon a mill-site, it shall be deemed to be sufficient assurance that it will be improved again by the owner for milling purposes, and the mill-site shall be exempt from the operation of the statute, unless it appears that, by long-continued non-user, all intention so to improve it at any time has been abandoned, when all right on the part of the owner so to improve it, in preference to other proprietors on the stream, shall be deemed

to be lost or defeated by abandonment or otherwise. It shall be preserved to him, and he shall have the right to maintain a mill on the site in preference to others, so long as there is any reasonable expectation that the object that the statute has in view will be carried out by the owner; but when that ceases to exist, his preferred right to maintain a mill on the site becomes lost or defeated by abandonment or otherwise. It may be said that in the exercise of the right of eminent domain the law appropriates all mill-sites to public use, but leaves the privilege of carrying out the object of the statute in each particular case to the owner and other proprietors on the stream. To the owner it gives a superior right, and to the other proprietors an inchoate right to the same mill-site. If the owner abandons his privilege, then his superior right is gone, and the case is the same as it would have been if no mill or mill-dam had ever been erected on the site, and the maxim applies, *prior tempore prior jure*. No other sensible construction can be given to the statute. No reason can be shown why a distinction should be made in favor of a mill-site upon which, two hundred years ago, a mill-dam was lawfully erected and used for a temporary purpose, but which during the period intervening has never been improved for milling purposes, and against a mill-site upon which no such erections were ever made.

The Supreme Court of Massachusetts, upon a statute which provided that any person might erect and maintain a water-mill and a dam to raise water for working it, although it might flow back upon land not belonging to the mill-owner, he being liable for the payment of damages in the manner provided by the statute, held, that the right conferred by the statute might be lost by abandonment or by non-user for an unreasonable length of time. Chief Justice Shaw, in giving the opinion of the court, in the case of *French* v. *Braintree Manufacturing Co.*, 23 Pick. 216, says, "From this view it is apparent that this statute privilege which has once attached to a mill-site by the actual erection of a mill and dam, may be lost in one of two modes; first by a voluntary abandonment; and secondly by non-user for an unreasonable length

of time." See also *Hatch* v. *Dwight*, 17 Mass., 289; *Hodges* v. *Hodges*, 5 Met., 205; *Fuller* v. *French*, 10 id., 359. These cases are not much in point, but they throw some light on the question we are considering.

The construction we have given to the statute, applied to the present case, leaves no room for doubt that the report of the committee should be accepted, and judgment rendered for the petitioner, and so we advise the Superior Court.

In this opinion the other judges concurred, except HINMAN, C. J., who dissented.