THE ELTING WOOLEN COMPANY *vs.* E. WINSLOW WILLIAMS.

Where two parties seek to appropriate the same water power to milling purposes, one by virtue of ownership and the other by proceedings under the flowage act, the law will favor the owner.

A fall below a mill, of such extent as to furnish a reasonable addition to the fall already in use, and purchased or held by the owner of the mill for such use at some future time, with the design in good faith so to apply it, will be protected as a part of a "mill-site lawfully in use" under the statute.

Where a mill owner purchased a piece of land below his mill sufficient to make a reasonable addition to his fall, but which could not be used as his mill was then situated, but was purchased that it might be used at some future time in connection with the privilege then in use, when he should determine so to use it, and where immediately after the purchase a petition was brought by a mill owner below for the right to flow the land so purchased, it was held that the petition ought not to be granted.

And held that it made no difference in favor of the petitioner that eight months after the petition was brought, and while it was pending, and before any use had been made of the additional fall, the respondent's mill was burned, and that he then sold the entire property to another party, who proceeded to erect a new mill, and that in planning for the new mill the design was first definitely formed of locating a mill so as to take advantage of the additional fall.

Held also that it made no difference that the land was purchased by the owner of the upper mill with the knowledge that the owner of the lower mill was negotiating for the purchase of the right to flow the land.

Such a negotiation can not be regarded as the commencement of proceedings under the flowage act.

PETITION under the flowage act, brought to the Superior Court in New London county.

The petition alleged that the petitioners were the owners in fee of a parcel of land and of a watermill thereon standing, situated on the river Yantic, in the town of Norwich, [describ-

ing it]; that the petitioners were also the owners of a dam standing upon the land and extending across the river near to the mill, by means of which the waters of the river were raised for the working of the mill, and which dam the petitioners had now the right to keep up and maintain to the height of, and no higher than, the highest of two composition pins set in a rock near the northerly end of the dam ; that for the more beneficial working of the mill the petitioners desired to raise their dam two feet higher than they had now the right to maintain it, and by means thereof to overflow a certain parcel of land of the respondent, E. Winslow Williams, situated on the river above the mill of the petitioners, [describing it] ; averring that the flowage of the land of the respondent by the raising of the dam as aforesaid would be for the public use, and that such raising of the dam would not operate to the injury of any mill lawfully existing, or to the injury of any mill-site, but that the petitioners could not agree with the respondent as to the damages to be paid him for flowing his land as aforesaid ; praying for the appointment of a committee &c.     The petition was dated and served on the 20th day of August, 1864.

The committee appointed in the case reported that the petitioners were, at the time of the bringing of their petition, the owners in fee of the lands described in it as belonging to them, with a water-mill thereon ; that they were also the owners of a dam thereon, by means of which their mill was operated, and had the right to keep up and maintain the dam to the height of the highest of two composition pins, as in the petition stated ; that Erastus Williams, father of the respondent, prior to and at the time of the bringing of the present petition, was the owner of the mill-site next above that of the petitioners on the river; that E. Winslow Williams, the respondent, at the request of his father, and on his account, (who afterwards paid for the same,) purchased, on the 18th day of August, 1864, two days before the service of the petition, of Wm. H Backus, the lands described in the petition as lands of the respondent, with full knowledge that negotiations had been commenced and were then pending between the petitioners and Backus for the purchase of the right to

flow the same ; that the lands so purchased had never formed a part of the mill-site or mill-privilege of Erastus Williams, and could not as the mill was then situated and had been used, be used in connection therewith ; that the same were purchased that the fall thereon might at some time in the future be added to and be used in connection with the fall in the privilege above, when the owner thereof might determine to do so ; that on the 19th day of August, 1864, prior to the service of the present petition, E. Winslow Williams removed a small quantity of stone from the bed of the river on the land, but not in pursuance of any plan or design then formed to incorporate or combine the fall on the land with the fall on the mill-site above; that afterwards, on the 22d day of August, 1864, E. Winslow Williams, by a warrantee deed, conveyed to Erastus Williams the lands so purchased of Backus ; that afterwards, in May, 1865, the woolen mill of Erastus Williams was destroyed by fire ; that afterwards, on the 5th day of June, 1865, Erastus Williams, by quit-claim deed, conveyed to E. Winslow Williams, the respondent, all his right, title and interest in and to the mill-site formerly owned by him, and also to the lands described in the petition as the lands of E. Winslow Williams ; that subsequently thereto E. Winslow Williams determined to erect a new°mill on the site of the old one, and then for the first time was formed the design to so place a water-mill as to make available the fall upon the lands purchased of Backus, in connection with the fall of the mill-site above, which design he afterwards executed, so far as the location of the wheel and race-way were concerned, but he had not, to the present time, done anything towards making the necessary excavations in the bed of the river below his race-way to render the fall available ; that the committee were of opinion that it would be of public use to raise the dam of the petitioners, together with the waste-way connected therewith and forming a part thereof, substantially upon the line upon which the same now stood, eighteen inches above the present height of the highest of the two composition bolts set in a rock near the northerly end of the present roll-way of the dam, particularly described in the petition, making and keeping the length or

roll-way of the dam of a length not less than the length of the present roll-way and waste-way taken together; and to flow so much of the land sought to be flowed, and described in the petition as the land of E. Winslow Williams, as would be flowed by raising the dam and waste-way connected therewith to the height named, and of the length named, and keeping up and maintaining the same at that height at all seasons of the year; and that the raising of the dam and waste-way to the height named would not operate to the injury of any mill or mill-site existing at the time the petition was brought. The committee therefore established the height above named as the height to which the dam and waste-way might be raised and maintained by the petitioners, and that the waters of the river might be flowed back upon the lands described in the petition as the lands of E. Winslow Williams, so far as the same might be flowed by the raising of the dam and waste-way to the height named, at all times and all seasons of the year thereafter; and assessed the damage done and to be paid by the petitioners to the respondent for such flowage and right to flow, at the sum of five hundred dollars.

The respondents remonstrated against the acceptance of the report, but the court overruled the remonstrance and accepted the report, and made the following additional finding of facts:

The court finds all the facts stated in the report of the committee in this case except so far as the same may be modified by the following facts found by the court in the hearing upon the remonstrance. The court finds that at the time the deed was given from Backus to the respondent, dated the 18th day of August, 1864, and at the time the petition was served, the respondent was in the possession and occupation of the mill and mill-site owned by his father, and described in the report of the committee under a lease of the same from his father. The court further finds that the fall upon the land purchased of Backus by the respondent for his father, and now owned by the respondent, would be essential to the successful working of the present mill erected by the respond-

ent upon the site of the old one, on account of the water-wheel being placed by the respondent so low as it is, should the excavations in the bed of the river upon the Backus land, rendered necessary to be made by the location of the wheel, be made ; for in that case the raised dam of the petitioners would flow the water upon the respondent's wheel. But the raised dam of the petitioners will not flow the water upon the respondent's wheel unless such excavations are made.

On these facts, and the facts found by the committee, the court reserved the case for the advice of this court.

*Wait* and *Hovey*, for the petitioners.

1. The land sought to be flowed was not a mill-site within the meaning of the statute. The committee so find in unmistakable terms, and there is nothing in the circumstances detailed in their report from which it can be inferred that the finding is not correct. *Occum Co.* v. *Sprague Manufacturing Co.*, 35 Conn., 496; Washb. on Easements, (1st ed.) 244, 245, and the cases there cited.

2. The land sought to be flowed was not, at the date of the commencement of these proceedings, or at any time previously, annexed to and made a part of the mill-site or mill-privilege of Erastus Williams, and thus appropriated by him to public use. 1st. In this part of the case the committee find that the land was purchased on the 18th day of August, 1864—that up to that time it had never formed a part of the mill-site or mill-privilege of Erastus Williams, and could not, as his mill was then situated and had been used, be used in connection therewith—that the same was purchased that the fall thereon might at some time in the future be added to and be used in connection with the privilege above when the owner thereof might determine so to do—that in the month of May, 1865, the old mill was destroyed by fire, and on the 5th of June following, the mill-privilege and the Backus land were conveyed by Erastus Williams to the respondent—that subsequently the respondent determined to erect a new mill on the site of the old one, and then for the first time was formed the design to so place a water-wheel as to make available the

fall upon the Backus land in connection with the fall of the mill-site above. These facts are clearly insufficient to constitute an appropriation of the land to public use. Washb. on Easements, 335, 336, 337, 338. 2d. The finding of the committee is in no respect modified by the fact that at the time the land sought to be flowed was purchased, the respondent was in the possession and occupation of the mill and mill-site of his father as lessee for a term of years then unexpired. The land was purchased by the respondent for his father, not for himself, and not for the purpose of using the fall upon it in connection with the fall above during the continuance of his lease, or at any other time. And this is shown by the fact that four days after the purchase was made the respondent conveyed the land to his father without any reservation of the right to use it in connection with the mill, and by the further fact that the land never was leased to the respondent by his father. The respondent, therefore, had no interest in the premises during the four days that he held the legal title, excepting as a mere trustee for his father. If, however, he intended at the time the land was purchased to appropriate the fall upon it and combine it with the fall which he held under his lease, of which, however, there is no evidence, he abandoned the intention and deprived himself of the power when he conveyed the land to his father.

3. Proceedings under the statute for the right to flow land cannot be commenced until the person desiring the right shall have attempted and failed to acquire it by purchase or agreement. The respondent purchased the land which is the subject of the controversy here, pending negotiations between the petitioners and the owner of the land for the right to flow it, and with full knowledge of the fact. He ought not, therefore, to stand in, any better situation or receive any more protection than Backus, his grantor, would if he had not sold the land and this suit were against him, but should have applied to him the rule which courts of equity apply in that class of cases where a person purchases with full notice of the legal or equitable title of other persons to the same property. 1 Story Eq. Jur., §§ 395, 396.

4. The court will not be influenced in giving to the Superior Court their advice in this case, by the consideration that the dam of the petitioners, if raised to the height established by the committee, will, in a certain event, set back the water upon the wheel of the respondent's present mill. 1st. The petition must be decided upon the state of things existing at the time it was served. The old mill was then standing and in operation, and would not have been affected by the raising of the petitioners' dam. Had, therefore, the petition been heard when it might and would have been but for obstacles created by the respondent or his father, it would have been finally disposed of before the old mill was destroyed. 2d. The petitioners, by the service of their petition, acquired an *inchoate* right to the privilege of raising their dam as provided by the statute ; and having proceeded in the case with all the diligence in their power, they are entitled to have that right established by the judgment of the court. Angell on Watercourses, § 493.

*Halsey* and *Pratt*, for the respondent.

PARK, J. We think the case of *The Occum Co.* v. *The Sprague Manufacturing Co.*, 35 Conn., 496, governs this case, and decides this controversy in favor of the respondent.

In that case it appeared that when the Spragues erected their mill they reserved a small portion of their water power for future use in connection with their mill privilege as circumstances might require; and it appearing to the court that the amount reserved was not unreasonable, in order to provide for contingencies that might arise in the construction of their works, and it further appearing that the reservation was made in good faith and with the design to appropriate the power reserved at some future time to milling purposes, the court held that the reservation was in contemplation of the statute a part of the mill-site or mill-privilege belonging to the Spragues, and was therefore protected by the statute.

The construction given to the act in that case clearly requires us to hold that the fall in controversy in this case

became a part of the mill-privilege of the grantor of the respondent as soon as the same was purchased.

It can make no difference in principle that the respondent negotiated the purchase for his father, who then owned the mill-site adjoining; or that the deed was taken in the name of the respondent, and so continued when this proceeding was brought; for the case finds that the purchase was made by the father through the son as an agent. The father owned the equitable interest, and could have compelled the son at any time to convey to him the legal title. The case therefore must be considered just as it would have been if the deed had been taken in the name of the father instead of that of the son, and these proceedings had been brought against him. If such had been the fact, no distinction in principle could be made between the present case and the one referred to, in favor of the latter. There was no intention in that case to appropriate the power reserved to immediate use, or at any definite time, and it had remained in the same unimproved condition for many years. In the case under consideration, no reasonable opportunity was afforded for carrying out the object of the purchase before the petition was brought; and the fact that proceedings seem to have been stayed for months afterwards, while this controversy was pending and the result of it uncertain, is of but little importance, so long as the original intent to annex the fall to the site above remained unabandoned. We think, therefore, that that case is decisive of the present one.

But if this was not so, we think, on another ground, that the decision must be in favor of the respondent.

This water power was purchased in good faith for milling purposes. We have then a case where two parties seek to appropriate the same power to the same public use,—one by virtue of ownership, and the other by proceedings under the flowage act. In the case of *Curtiss* v. *Smith*, 35 Conn., 156, we said that the flowage act favors the owner when all other circumstances are equal. This is shown by the fact that the first enactment on the subject excluded all mill-sites from the operation of the statute. This act was followed by another

that excluded all mill-sites whereon a mill or mill-dam had been lawfully erected and used, unless the right to maintain a mill thereon had been lost or defeated. The first statute considered that the owner of a mill-site would appropriate it to the uses to which it was peculiarly adapted and chiefly valuable, and that therefore the object of the statute would be accomplished without taking it from the owner. The last enactment requires more probability than the first that the owner will so appropriate his mill-site; but both acts show a reluctance to take water power from the owner, so long as any reasonable expectation remains that he will carry out the object of the statute, that it should be devoted to milling purposes.

Suppose the owner of water power commences to erect a mill thereon for milling purposes. No one would contend that it could be appropriated by another party under the flowage act, no matter whether a mill or mill-dam had been lawfully erected and used thereon or not. The object of the statute does not apply to the case. There is no necessity for its application. If the owner voluntarily appropriates his site to the public use specified in the statute the object of the law is accomplished. The rights of the owner, therefore, should be respected when all other circumstances are equal, to say the least, and more especially when the law considers it a hardship to deprive the owner of his property, and never does it unless necessity requires it for the public good. Wherein does this case differ in principle? If this water power is taken by the petitioners, they can do no more than devote it to milling purposes. But the respondent's grantor had just purchased it for the express purpose of so devoting it, when this petition was brought. Buying it in good faith to appropriate it to milling purposes within a reasonable time under all the circumstances, was commencing the appropriation; and surely the owner ought to have a reasonable opportunity to accomplish his object. And, furthermore, the day after the purchase was made, and before the commencement of this suit, some work was done to prepare the ground for its designed use.

We think, therefore, the grantor of the respondent was first in the commencement of proceedings to appropriate this water power to public use, and was therefore first in right. *French* v. *Braintree Manufacturing Co.*, 23 Pick., 216; *Lincoln* v. *Chadbourne*, 56 Maine, 197.

The petitioners claim that they were negotiating to purchase the water power when the respondent made the purchase for his father, and that this fact was well known to him at the time; and that, inasmuch as the flowage act requires as a condition precedent to the bringing of a petition, that the petitioners should endeavor to agree with the owner as to the damages that should be paid for the right to flow, this negotiation should be considered as the commencement of proceedings so far as the respondent is concerned. But it is clear that negotiations to purchase cannot be so regarded. It has ever been held that the service of process is the commencement of a suit, and we see nothing in a case of this character that requires a different rule.

We advise the Superior Court to render judgment for the respondent.

In this opinion the other judges concurred.