CONNOR and HOKE, JJ., dissenting.
This action was begun before a justice of the peace, and on appeal the defendant was again convicted in the Superior Court for a violation of chapter 824, Laws 1905, which provides: "It shall be unlawful for any person to hedge, or fish with traps in the waters of Bear Creek between the mouth of said creek where it empties into Neuse River and the Joyner mill seat in Lenoir County."
The word "mill-seat" is synonymous with mill site and means "where the mill sits." Miller v. Ins. Co., 7 Fed., 651. In Curtis v. Smith,35 Conn. 158, it is said: "A mill site comprehends not only the site of the mill building, but also the water power connected therewith for milling purposes." The grant of a mill site conveys by implication the water power and the right to maintain a dam for the beneficial appropriation of the water. Stackpole v. Curtis, 32 Me. 383; Ring v. Walker, 87 Me. 550. InOccum Co. v. Mfg. Co., 35 Conn. 512, it is said: "A mill site is the same as a mill privilege, which, in Gould v. Duck Co., 13 Gray (Mass.), 442, was said "to embrace the right which the law *Page 449 
gives the owner to erect a mill thereon, and to hold up or let out the water at the will of the occupant for the purpose of operating the same in a reasonable manner." 20 A. E. (2 Ed.), 675; Crosby v. Bradbury,20 Me. 65; Burr v. Mills, 21 Wend., 294.
A "mill seat" means the mill house, dam, and appurtenances used for operating the mill by water power, and the ground upon which they stand. The evident purpose of the General Assembly in this statute to keep the waters of Bear Creek free from hedges or traps; so that fish might run up the same as far as the obstruction caused by the dam and water power at Joyner's mill, beyond which they could not go. The right to regulate fisheries, even on private property, is settled beyond controversy, 2 Farnham on Waters, sections 381, 382; Collins v. Benbury, 25 N.C. 277; S. v. Gallop, 126 N.C. (576) 983, and cases there cited, and in 13 A. E. (2 Ed.), 573, 576, 579, and notes; S. v. Bridgers, 142 Ill. 41; S. v. Roberts, 59 N. H., 484; Howes v.Grush, 131 Mass. 207.
This case turns upon the meaning of the word "mill seat" which is to be taken in its ordinary and usual signification, which is necessarily the same in both criminal and civil proceedings. The rule that criminal statutes are to be strictly construed applies when the scope of the act is doubtful, and does not mean that a word is to be given a different meaning in a criminal action from that which would be given it in a civil proceeding. Words are used by the law-making power to express, not to conceal, its meaning, and hence are to be taken as ordinarily understood, alike in criminal and civil actions.
It is stated in the case on appeal that "many years ago, the original conveyance of this mill property conveyed about 20 acres of land for a mill seat, and that the property conveyed to the defendant includes about 20 acres of land, and extends about 75 yards below the mouths of the ditches," which were "15 or 20 yards below the mill house," and on both sides of the mill race. In these ditches and also on the sheeting of the mill, under the roof of the mill house, the defendant set wire fences or hedges, and caught fish. The latter were on the "mill seat" or site, as we understand and define the word, and defendant was authorized so to do. He is not prohibited to catch in this manner fish coming out of the pond, but he cannot interfere by such hedge with those which could come up from the mouth of Bear Creek till stopped at the dam and mill seat.
It is further contended, however, by the defendant that the hedges set "15 or 20 yards below the mill house" were lawful because the owner of the mill house also owned the land for 75 yards below the mill.
Suppose he had owned a tract of 2,000 acres or 20,000 around the *Page 450 
(577) mill, would his privileges under this act have been any greater than those of a man who owned only the "mill seat" itself? He had no inherent right of fishing in Bear Creek. That was a sovereign right of the State to be permitted or denied at the will of the sovereign, speaking, in the only way in which it could make known its will, through the law-making power. In forbidding the monopoly of fishing by hedges and traps and leaving fishing free to all, on Bear Creek, from its mouth to Joyner's mill seat, the Legislature was thinking of the unobstructed part of the creek up to Joyner's mill house and dam, and was regardless of the extent of dry land along the creek, between those points which might be owned by the owner of the "mill seat." By "mill seat" it intended to designate a well defined landmark, which all men may know — the dam and mill — and not the extent of the mill owner's territorial possessions in the vicinity.
The original deed seems merely to have conveyed 20 acres that a mill seat might be located somewhere upon it. The deed to the present owner does not seem, from the case on appeal, to contain even that provision. But if the deed to the defendant had conveyed 20 acres, or 20,000 acres, and described such tract as a "mill seat" this provision in a deed would not change the meaning of a word of common usage and well defined significance when used in a statute. It would not make a whole body of land a mill site, or seat, because there was a mill run by water power somewhere within its boundaries. The setting the wire fences or traps, and taking fish therefrom "15 or 20 yards below the mill house," being "between the mouth of Bear Creek" and the "mill seat," the court properly adjudged the defendant guilty upon the special verdict. Though these ditches are filled with water and hence have fish (578) only in overflows from the pond, the waters are part of "the waters of Bear Creek,: and when they go back into the main run the fish in them are not to be restrained and caught by forbidden hedges and nets. The owner of the mill has no rights over either the water, or the fish therein, after they have gone by the wheel or dam. "The mill will not grind again with the water that has passed."
From the amount of the fine imposed -$5- we presume that this was merely a test case, to decide upon the defendant's right of catching fish by hedges or traps, which right under the statute does not extend lower down than catching them in that mode, on the sheeting, or at any other spot on the mill site, as they come down out of the pond, through the forebay or over the dam. Below that the waters of Bear Creek are free from such inventions, and
"May roll unvexed to the sea."
Affirmed *Page 451