## TINKHAM vs. ARNOLD.

The undisturbed enjoyment of any *known legal right*, such as the flowing of lands for the support of mills, &c. for *any* term of time, furnishes no presumptive evidence of a grant.

This presumption arises only in cases where the user or occupancy would otherwise be unlawful.

Where a legal title to hold land is disclosed to the Court, the party shall not be admitted to say that he holds by wrong.

In a case reserved upon the report of the Judge, no point is open to the parties except those which appear in the report.

IN a complaint under the statute for the support and regulation of mills, against the defendant for flowing the lands of the complainant, the defendant, among other things, pleaded that on the first day of *March* 1783, the proprietors of the *Kennebec* purchase, being seised of all the land in question, granted by their deed, which is lost, to *James Bowdoin*, whose estate he has, the right to erect, keep up, and maintain the dam mentioned in the complaint, and to flow the land therein described, free of any claim for damages.

At the trial before the *Chief Justice*, upon a traverse of these facts, it appeared that the *Kennebec* proprietors, at the time mentioned in the plea, were seised in fee of a large tract of land, including a mill-site and land, which on that day they conveyed to *James Bowdoin*, and which came by regular conveyances to the defendant; and that in 1809, the part flowed was conveyed to the complainant by a stranger, and confirmed to him by deed of the proprietors' agents in 1821;—and that at the time of these conveyances, and for about forty years prior to the date of the complaint, the lands therein described had been flowed by the defendant's dam, to the height mentioned in the complaint.

The defendant relied on the undisturbed use and enjoyment of this privilege or easement for that term of time, as presumptive evidence of the grant set forth in his plea;—but the *Chief Justice* ruled it incompetent evidence to go to the jury for that purpose, because the flowing was a lawful act, by the statute; and a verdict being returned for the complainant, this point was reserved for the opinion of the Court.

*Bond* and *Clark*, for the defendant, were about to open the argument upon a point not raised in the Judge's report; to which *Weston J.* objected, unless the report was first amended, by consent, for that purpose. This the adverse counsel declining, the Court said that the verdict not being taken subject to their opinion upon the *whole case*, no point was now open to the parties, except those stated in the report.

They then adverted to the policy of the law, encouraging, as it does, the erection and support of mills; and contended that the right to flow lands without payment of damages ought not to be abridged, but rather enlarged, by legal construction. Here the question was whether the enjoyment of this right by the defendant, for so long a term, was adverse to the rights of all other persons, or not; and the whole evidence to this point ought to have been submitted to the jury. For if it was of that character, it was conclusive evidence of an original grant. *Holcroft v. Heel* 1 *Bos. & Pul.* 400. *Campbell v. Wilscn* 3 *East* 294. *Bealey v. Shaw* 6 *East* 208. *Weld v. Hornby* 7 *East* 195. 2 *Saund.* 175, note. *Story v. Odin* 12 *Mass.* 157. *Gayetty v. Bethune* 14 *Mass.* 49.

The defendant's estate being the same with that of his predecessors, who commenced the flowing forty years ago, the question must be decided by reference to the law *then* in force, viz. *Stat.* 1714, *Ancient Charters*, ch. 111, which did not take away the common law remedy by trespass *quare clausum*, because it contained no provision for a trial of the right to flow the land, nor of the complainant's title to the soil; and therefore no occupancy of the land could be considered as in submission either to the rights of the complainant, or to the remedy provided by the statute. The trial of these questions, under this process, was first provided for by the statutes of 1796 and 1798; but the defendant cannot justly be said to have occupied under these statutes, since he took the estate *as* his grantor held it, and merely continued an act whose character was established fifteen years before, by the law then in force.

Tinkham v. Arnold.

R. *Williams* and *A. Belcher*, for the complainant.

The cases where a grant is presumed from *user*, are where the owner of the soil had *knowledge* of the adverse occupancy; otherwise his silence is no evidence of a grant. 1 *Phil. Evid.* 117, 120, 125. 10 *Mass* 72.

The presumption of law is, that every man acts according to his rights. But by *Stat.* 1714, it was made lawful to flow land for the support of mills; and every act of the defendant, offered in evidence, might well consist with his rights by this statute; and was no evidence of a grant, because it was lawful without one. It could not therefore be deemed adverse to the title of the owner of the land. *Bethum v. Turner* 1 *Greenl.* 111. *Ricard v. Williams* 7 *Wheat.* 59. *Cooper v. Barber* 3 *Taunt.* 99.

MELLEN C. J. delivered the opinion of the Court, as follows.

By the report in this case it appears that the only question reserved for the decision of the Court is, whether the opinion of the Judge who presided at the trial of the cause, was correct upon the point stated;—viz. that the continuance of the mill-dam for about forty years past, was not legal evidence of a grant from the proprietors of the *Kennebec* purchase, of a right to flow the lands in question without payment of any damages, as mentioned in the third plea of the respondent; the flowing being a lawful act.

The argument of his counsel proceeds on the ground that after the lapse of so many years, a grant may, and ought to be presumed ; inasmuch as during all that period no objection has been made against its continuance; and no claim for damages has ever been exhibited against any one, prior to the present complaint.

The validity of this argument depends on the circumstances under which the dam was originally erected, and has since been continued; producing its natural consequence—the flowing of the lands adjoining the river above it. When one person has been for many years in the open and undisturbed enjoyment of an easement in the land of another, with the knowledge of the true owner of the land, a grant may be, and often is presumed. The presumption is founded on the implied admission of the real proprietor that the easement had a lawful origin and commencement, and had been lawfully continued under his original permission, though

Tinkham *v.* Arnold.

the written evidence of the grant may be lost.    The law gives a natural construction to the conduct of the parties; and, after a long succession of years, presumes that the person enjoying the easement, having no right to enjoy it *unless* under the grant of the true owner, *had* such a grant; and that in consequence of it he had never been molested in his enjoyment.    This, in the absence of all explanatory circumstances, would be the usual and legal presumption.    But in the case above supposed, if the person claiming to be the true owner could show that the easement was enjoyed only by consent, for a limited number of years, or during pleasure, and that the term had elapsed, or the permission been revoked, it seems clear that in such cases all presumption of grant would instantly vanish, whatever length of time the user had under such circumstances been continued.    In 1 *Phil. Evid.* 125, it is laid down, that "the presumption of a deed from long usage " is for the furtherance of justice, and for the sake of peace, " when there has been a *long exercise of an adverse right.*"    In support of this principle the case of *Knight v. Halsey* 2 *Bos. & Pul.* 206, and many other cases are cited.    So in *Holcroft v. Heel* 1 *Bos. & Pul.* 400, it was decided that " an *adverse* enjoyment of a " way over another person's land for above twenty years, is strong " ground for the jury to presume a grant."    See also 1 *Phil. Evid.* 125, 129, and the numerous cases there cited.    It will be observed that in these cases the possession and user were *unlawful* and *adverse,*—not by permission of the owner of the land.    Professor *Stearns,* in his treatise on the law and practice of real actions, page 240, says—" Presumptions of this kind are adopted " from the *general infirmity* of human nature, the *difficulty* of pre- " serving muniments of title, and the *public policy* of supporting " long and uninterrupted possessions.    They are founded upon the " consideration that the facts are such as could not, according to " the ordinary course of human affairs, occur, unless there was a " transmutation of title to, or admission of an existing title in, the " party in possession.    They may therefore be encountered and " rebutted by contrary presumptions; and can never fairly arise " where all the circumstances are *perfectly consistent with the non-* " *existence of a grant.*"    In cases like the present, the ground of

presumption fails;—the reason of the law ceases, and the legal principle also ceases. These positions are plain, and require neither further illustration nor authorities.

Let us now examine the principles especially applicable to the case before us. As early as the year 1714, it was provided by a provincial act, that " where any person or persons have already " or shall hereafter set up any water mill or mills, upon his or " their own lands, or with the consent of the proprietors of such " lands, legally obtained, whereupon such mill or mills are or " shall be erected or built; that then such owner or owners shall " have *free liberty* to continue and improve such pond for their " best advantage, without molestation." The act further provided the mode by which persons whose lands were injured might obtain compensation. By the statute of 1795, *ch.* 74, provisions were made nearly similar to these, though more particular and numerous; which, with few alterations, have been enacted in this State, by *stat.* 1821, *ch.* 45,—but in all, the *right to flow* the lands of others, paying damages, is distinctly given and continued to mill owners. Under this licence, *given by law*, the dam in question was built and has been continued. Of course no consent of the owner of the land flowed was *necessary* to be given; and therefore none *need* be, or *can* be presumed, notwithstanding the lapse of forty years.

The facts which the defendant offered to prove, were not denied by the complainant; but the relevancy of those facts was the matter in dispute; and the question presented at the trial was, whether from them any presumption arose, or could arise, in favor of such a grant as is alleged in the plea in bar, inasmuch as the acts done and continued by the defendant and those under whom he claims were *permitted by law*, upon the terms and conditions before mentioned. It has been pressed upon us in the argument that the facts on which the presumption of a grant is alleged to depend, should be submitted to the decision of the jury, together with the facts relied on as repelling that presumption. This is true; but such is not the present case. The complainant does not rely on any *proveable facts* to repel the alleged presumption; but upon a *public statute*, of which the Court are bound to take judicial notice. There was nothing in contest before the

jury;—nothing for them to decide.    The undisturbed user of the mill-dam, and continuance of the flowing, was the only fact offered to be proved; and this has never been contested.    Under such circumstances it was a question of law, whether, from those admitted facts, authorized by a public statute, it was competent for the jury to presume a grant.    As it would have been improper for them, in such circumstances, to presume the alleged grant, the rejected proof could be of no use to them; and in fact could not authorize them to find a verdict for the defendant.

But it has been further urged, that the fact may have been, that the defendant and those under whom he claims, never considered themselves as acting under the license given by the statute; but independently of its provisions and in opposition to them.    To this it may be replied that when a man has a *legal title*, which is disclosed to the Court, he shall not be received to say that he holds by wrong.

It is true no damages have before been demanded; but they might have been, if actually sustained;—and the omission to claim these furnishes no presumptive evidence of grant of the easement in question, when by law, such a grant was not necessary, and when the conduct of all concerned was explainable on legal grounds, without recourse to such presumption.    Surely if a lessee had been in possession of a farm for thirty or forty years, by the written or verbal permission of the owner, and under an agreement to pay him a reasonable sum annually for the use of it, a jury could not presume that the farm had been granted and conveyed to the lessee, to hold free of all claims of the owner, merely because he had never been called on for the agreed rent.    Perhaps a part of it might be lost by the operation of the statute of limitations, or the common law presumption of payment after the lapse of twenty years; but no other consequence would ensue, to the injury of the owner.    The undisturbed enjoyment of a *known legal right*, furnishes no ground of presumption either way;—and none is necessary.    A *right* is sometimes presumed from circumstances, where the origin and fountain cannot be found.    By a long series of years, wrongs may ripen into rights; but the enjoyment of a *right* gives no title to its continuance beyond its own limits and duration.    On

these grounds we think the opinion of the presiding Judge was correct, and that the defence is unsubstantial.

*Judgment on the verdict.*