## Benjamin V. French *versus* The Braintree Manufacturing Company.

An express declaration by the owner of a mill privilege, that it is no longer his in-
tention to keep up the mill, accompanied with corresponding acts, such as remov-
ing the dam and mill, giving notice of such intention to those whose lands he has
flowed, and to whom he has paid damages, and the like, will be deemed an aban-
donment and extinguishment of the privilege.

If the owner of a mill privilege cease to use the same for an unreasonable length of
time, the privilege is thereby lost ; and the entire and continued disuse of such
privilege for twenty years, is strong *primâ facie* evidence of a non-user for an un-
reasonable length of time, and unless rebutted by clear and satisfactory proof, is
conclusive.

THIS was an action on the case against the defendant, for
erecting a dam and raising the water of Monatiquot river, a
small unnavigable stream, in Braintree, in such a manner as to
throw it back upon a mill-dam which the plaintiff had previous-
ly begun to construct.

The trial was before *Morton* J.

The defendants proved, that more than ten years prior to 1784,
Hobart Clark owned a dam and fulling-mill standing on the
site of the dam erected by them ; that in January 1784, the mill
and dam were carried away by a freshet; that from that time un-
til 1808, when Clark died, he owned and occupied the land on
both sides of the river on which the mill and dam had stood, but
did not rebuild or repair the dam or mill; that in 1808 or 1809,
soon after the death of Clark, Adam Hobart, with the consent
of some of the heirs of Clark, put in a trough and fixed a lathe
on the same site, for a short time, without rebuilding or repair-
ing the dam, but finding that he could not get sufficient power
in that way to carry his lathe, abandoned it without having
done any business of consequence there ; that from that time
until the erection of the defendants' dam, no use whatever was
made of the water power, and nothing was done by way of re-
building or repairing the dam.   It was also proved, that in
1814, partition was made of the estate of Clark among his
heirs, under a process from the Probate Court, and the land
on the north side of the river, extending to the centre of the
stream, was set off to one heir, and that on the south side, to
two others ; that in 1827 the defendants purchased the land on

the north side, and, on the 6th of August, 1836, after the plaintiff had commenced the erection of his dam, purchased that on the south side ; and that, soon afterwards, they commenced the erection of the dam complained of.

The plaintiff contended, that the rights attached to the old mill had been legally abandoned and had ceased.

The judge ruled, that the ancient right to the mill privilege, if any had ever been acquired, had been lost.

A verdict was thereupon taken, by consent, for the plaintiff, subject to the opinion of the whole Court. If the Court should be of opinion, upon these facts, that there had been an abandonment or loss of the right to the privilege, a new trial was to be granted ; otherwise, judgment was to be rendered on the verdict.

*Metcalf* and *R. Choate*, for the defendants, cited *Hatch* v. *Dwight*, 17 Mass. R. 289 ; 2 Bl. Comm. 10, 14 ; 3 Touillier's Droit Civil, 526, 545 ; *Shury* v. *Pigott*, Popham, 166 ; *Moore* v. *Rawson*, 3 Barn. & Cressw. 332 ; *Lawrence* v. *Obee*, 3 Campb. 514 ; 3 Kent's Comm. 359 ; Woolrych on Water-Courses, 234 ; *Prescott* v. *Phillips*, 2 Evans's Poth. 136 ; *White* v. *Crawford*, 10 Mass. R. 183 ; Co. Lit. 114 *b*.

*Richardson* and *Cushing*, for the plaintiff, cited *Lawrence* v. *Obee*, 3 Campb. 514 ; Angell on Water-Courses, 49, 69 ; 3 Kent's Comm. 359, notes ; *Hoffman* v. *Savage*, 15 Mass. R. 130.

SHAW C. J. drew up the opinion of the Court. The question arising in the present case, cannot receive much elucidation from the doctrines of the common law, on the subject of easements, prescriptions and implied grants, which may be presumed from long continued and adverse use and enjoyment ; nor can much aid be afforded to the discussion, by the civil law doctrine of servitudes, except as they tend to show what is reasonable and equitable in like cases. The case does not rest upon the principles of grant, express or implied, to any considerable extent, but upon the construction and operation of the statutes of the Commonwealth, on the subject of mills and mill-dams.

It becomes therefore necessary to consider precisely what the question is, and then to inquire into the principles on which it must be determined.

The defendants contend, that upon the site of the dam complained of there was formerly a dam and mill, that the right to a dam and mill there by the owners of the soil, has never been lost, abandoned, or otherwise lawfully extinguished, and therefore that by principles of law, and by the force and operation of the statutes of the Commonwealth, they had a right to erect and continue their mill and dam there, although the consequence would be the flowing back of the stream, to such an extent as to impair or destroy the plaintiff's mill privilege. And the question is, whether the defendants have such right, upon the facts proved. This question, it will be perceived, does not depend upon any supposed grant, express or implied, or upon any easement or other right acquired by grant, but upon the construction and operation of the statutes. It is not denied, that the defendants owned the land upon both sides of the stream, at the time they thus erected the dam complained of ; they had owned the land on one side for several years previously ; and they purchased the land on the other side, shortly before they built the dam complained of. As owners of the land upon both sides, they might make any lawful use of it ; they might erect any building thereon, and might build a dam thereon, and make any use of the water flowing over the land, consistently with the plaintiff's right to complete his dam and mills, and use them for mill purposes. But the defendants go further and insist, that they had not only the right belonging to them as proprietors of land having a running stream flowing across it, to make an equal use of such stream in common with all other owners of lands, on the same stream above and below, but that in addition to this, they had the superadded right, given by the statute to those who have actually erected mills, on their own land, to keep up their head of water, notwithstanding the keeping up such head of water does necessarily flow the water back upon an upper proprietor, and incidentally prevent him from making use of the water on his own land, which would have fall enough to be applicable to some useful purpose, if it were not diminished by the water thus thrown back by the mill-owner next below.

The rights of these parties in this respect, must be regulated by the Revised Statutes, which went into operation in May

1836 ; though in this respect, there is no substantial difference between the Revised Statutes, and those which were before in force. Revised Stat. c. 116, § 1 ; St. 1795, c. 74, § 1.

The statute provides, that any person may erect and maintain a water-mill and a dam to raise water for working it, although it may flow back upon lands not belonging to such mill-owner, he being liable for the payment of damages, in the manner specially provided by the statute. This is the nature of the right intended to be secured to the mill-owner. But it is manifest, that the object of the provision, as well as the literal enactment, was, that the mill should be maintained in a working condition. It would follow, therefore, as a necessary restriction upon this right, that when a mill is once established and put in operation under this statute, it cannot be competent for the owner on the stream next below, to build a dam on his land and raise a head of water, in such manner as to flow the mill already built above ; and although there is no limitation in terms, such a construction of the statute would make it contradictory to itself, by defeating the very right which it first grants. Whether it is competent for a mill-owner under the act to flow another's lands, having dwellinghouses or other buildings upon them, I believe has never been distinctly decided ; but whether it be so or not, it cannot be so construed as to authorize the overflowing of other mills, protected by the statute.

If therefore a mill-owner has thus erected his dam and mill, the statute authorizes him to maintain it ; and therefore if an upper proprietor places a dam on that part of his land, which is already flowed by a dam below, he does it in his own wrong, and can maintain no action against the proprietor of the latter for so doing. But after a mill has been erected and this statute right has attached to it, it may be impossible always and at all times to keep the water flowed to the requisite height, and to keep the mill in constant operation ; the dam may be carried away by floods, the mill destroyed by fire, or both become dilapidated by age and wear. In all these cases, it may be necessary to take them down and rebuild them. But it would be wholly inconsistent with the nature of the right granted and with the objects and purposes of such grant, to hold, that because the

dam is temporarily removed, parties holding lands on the stream above or below are remitted to their original rights, and the statute right of the particular mill is extinguished    Some time therefore must be allowed to the mill-owner, to repair his dam and replace his mill ; but as no time is fixed by law, it must be a reasonable time.    What is a reasonable time, must depend upon the circumstances of the case ; and if all the circumstances bearing upon the question are admitted or proved, it must be deemed a question of law, to be decided by the Court.

From this view of the subject, it is clear, we think, that in addition to the natural common law right, which every owner of land on both sides of a stream of water has, to make a reasonable use of the water as it flows over his lands, for mill purposes, such a proprietor, who has actually erected a dam and a mill, has two other rights by force of the statute.

The first is, to raise and keep up the water by the dam on his own land, although the land of the owner above may be thereby flowed.    The second is, to hold his own mill exempt from any liability to be flowed by the owner of land below, by any dam, raised after such mill and dam have been erected. But these rights, being granted for the better use of the water-power, upon considerations of public policy and the general good, are given with a view to keeping up and maintaining mills for use, which is deemed for the public good ; and the right must be considered as incident and subservient to this purpose, as attached to mills for use, and not as attached to the land merely ; and therefore it is not perpetual.

When and under what circumstances shall it cease ?    It is very clear, that although the legislature manifestly contemplated, that the public were to derive a benefit from the use of mills, yet it was through the proprietors' own interest to maintain them ; and no corresponding duty was imposed on the mill-owner to keep up his mills.    He may therefore voluntarily abandon them and appropriate his land to some other use, if he shall see fit so to do.

Further, it was manifestly the original policy of the legislature in these statutes, that streams capable of being applied to mill purposes, should be so appropriated by the owners of the lands, through which they run, and that the owners should be encouraged by special privileges, and that they ought not to

be discouraged by many doubts and disputes, as the preamble to one of the statutes expresses it, from thus using and appropriating their lands and mill sites. It is equally clear that it would be contrary to this policy and to the whole object and purpose of the statutes, to hold that, because a mill had been once erected and temporarily maintained, and then suffered for a long and unreasonable time to be wholly disused, such mill should still have such a privilege in perpetuity, as to exclude other owners of lands on the same stream, from erecting mills on their own lands. It would be depriving the public of the benefit intended to be secured to them by the grant of the privilege. The public would not only lose the benefit expected from the use of the mill, to which the privilege was granted, but would suffer the further inconvenience arising from preventing the erection of mills, which, but for the existence of such prior privileges, might be erected. From the nature of the privilege therefore, which is not perpetual, and the purposes for which it is granted, it seems to be a reasonable if not a necessary construction of these statutes, that if the owner shall wholly cease to use his land for mill purposes, for an unreasonable length of time, the privilege is gone, and other proprietors of lands on the stream are remitted to their natural and common law rights.

From this view it is apparent, that this statute privilege, which has once attached to a mill site, by the actual erection of a mill and dam, may be lost in one of two modes ; first, by a voluntary abandonment ; and secondly, by a non-user for an unreasonable length of time.

The Court are of opinion, that as this statute privilege was given to a proprietor of a mill site, in the expectation and upon consideration of his keeping up mills, useful and beneficial to the public, if the owner of the land, to which the privilege is attached, will voluntarily abandon it, by an express declaration, that it is no longer his intention to keep up his mills, accompanied with corresponding acts, such as removing his dam and mills, giving notice to those whose lands he has before flowed and to whom he has paid damages, that it is no longer his intention to flow them, and the like, this would be an abandonment and extinguishment of the privilege.

19 *

Whether there may be an implied abandonment, from the removal of mills, the appropriation of his own land, which had been before flowed, to other uses, inconsistent with an intention of again flowing them, as by cultivating the land or erecting buildings thereon, or whether from other circumstances, without any express declaration of purpose, an abandonment may be implied, we give no opinion.

There may be difficulties in the application of the principle of abandonment, treated as a positive and operative act and contradistinguished from *non user* or mere negative conduct. One question may be, what species of interest shall enable an owner or occupant to abandon. In case of a person, who is owner in fee of the soil, on both sides, and of the mill to which the privilege is attached, of full age and under no disability, there can be no doubt. But where there is a tenant for life or years, with remainder or reversion in another, where the estate is held by tenants in common or joint tenants, or persons under disability, questions may arise. It can only be said in general terms, that as the privilege in question, has been attached to the estate as an incident, and will pass with it, until severed, such abandonment can only be made by those, who have a disposing power over the estate.

Upon the other point the Court are of opinion, that where a dam and mill have been erected and put in operation, so that the statute privilege has attached to it, an entire and continued disuse of the dam for mill purposes, for the term of twenty years, is strong *primâ facie* evidence of ceasing to use the privilege for an unreasonable time, by which the privilege is lost to the owner, and unless rebutted by clear, strong and satisfactory proof of explanatory circumstances, must be taken to be conclusive. If the rebuilding of the dam or mill have been commenced, but destroyed by fire or flood or other casualty, if definite arrangements have been made to rebuild, in good faith, but are defeated by causes over which the parties had no control, these might well be deemed proof of a proper character tending to rebut such presumption of unreasonable delay. But the presumption should be regarded as the settled rule, and not to be changed without full proof of circumstances, showing a reasonable and satisfactory excuse for the delay.

In saying, that to avoid losing the statute privilege attached to a mill once actually used, by unreasonable delay, the dam and mill must not be disused for mill purposes, more than twenty years, the Court do not mean to be understood as laying down the rule, that a mill must be built on or near the same site with the dam. It has been held, that a dam raised at a distance from a mill, with the immediate purpose of creating a reservoir but intended to raise a head of water for the use of such mill, is a mill-dam within the true intent of the statute, which the owner may keep up and maintain, in the same manner as if immediately adjacent to the mill, to the working of which it is subservient. *Wolcott W. M. Co.* v. *Upham*, 5 Pick. 292.

So, on the contrary, if the mill is wholly removed, and the head of water kept up by the dam, before used as a mill-dam, for wholly distinct purposes, as for the irrigation of land, the privilege attached to the mill site, by statute, would cease, after twenty years of such non-user for mill purposes.

In applying these principles, the Court are all of opinion, upon the facts shown by the report, that the defendants could not justify the rebuilding of the dam complained of, so as to flow up and throw back water upon the plaintiff's dam. The mill and mill-dam on that site, had been wholly disused, for a period long exceeding twenty years, by which the parties above and below, were remitted to their original and common law rights ; and as the plaintiff had commenced the erection of his dam and mill on his own land, the defendants had no right to flow back the water upon and thus destroy or impair his mill privilege. The evidence upon the question of fact is quite decisive. After the destruction of Hobart Clark's mill, more than twenty years elapsed, before any thing was done. The placing of the trench and lathe in 1809, was not a renewal of the privilege, because no dam was placed to raise the head of water, which is the peculiar object of the statute protection. Then the division of the estate, and the assignment of the land on the opposite sides of the stream to different heirs, is a very strong circumstance. It was urged in argument, that upon this division, no assignment or appropriation was made of the mill privilege. But it is to be remembered that the privilege or

French
*v.*
Braintree
Manuf. Co.

right of erecting and maintaining a mill, is incident to the ownership of the soil, and where there are different owners upon the opposite banks of a running stream, so situated, that the water cannot be raised to any useful purpose, without a dam across the stream, both riparian proprietors must concur, in the erection of such a dam. Independently of the land, there was no privilege to appropriate. But without considering whether the evidence would be sufficient to prove an intentional abandonment, we think it decisive of a continued non-user for more than twenty years, wholly unexplained, by means of which the statute privilege, once attached to Hobart Clark's mill, was extinguished and lost.