BENJAMIN F. NOSSER, APPELLANT, v. CHARLES SEELEY, APPELLEE.

Ad Quod Damnum. In proceedings under the act relating to mills and mill-dams, where A in good faith commenced the erection of a mill, of which B had notice, and to which he made no objection, he cannot, after A has expended a considerable sum on his mill, enjoin him from erecting a dam, the effect of which would be to flow the water back on an unoccupied mill site owned by B.

APPEAL from the district court of York county. Tried below before POST, J.

*George B. France* and *Brown & Marshall*, for appellant.

1. The court erred in its conclusion of law "that the plaintiff is estopped from asserting his rights in

Nosser v. Seeley.

this action." We have endeavored to show that there is no evidence to sustain the finding of fact upon which this conclusion of law is based. But if the evidence warranted the finding of fact as found by the court, still the conclusion of law is erroneous. Nothing short of an express license given by Nosser to Seeley granting to him the privilege of flooding his land, which license was relied on by Seeley, and acted upon by him when he erected his mill and dam, can estop Nosser from asserting his claim in this action, and it is very questionable whether, if such license is given by parol, it cannot be revoked at the pleasure of the party giving it. Cooley on Torts, 307–312. *Corning v. Troy*, 40 N. Y., 191–203. *Turner v. Coffin*, 12 Allen, 401. *Hayes v. Livingston*, 34 Mich., 384. 1 Washburn on Real Property, 2d ed., 414, 415. *Hazleton v. Putnam*, 3 Chand. Wis., 117. *Thompson v. Gregory*, 4 Johns., 81. *Hall v. Chaffus*, 13 Vt., 150. *Woodward v. Seely*, 11 Ill., 157–165. *French v. Owen*, 2 Wis., 250.

2. He who first occupies a mill site and constructs a mill and dam upon a stream does *not* thereby acquire any right whatever to overflow the land of his neighbor, whether his neighbor has a mill or not. There can be no doubt that every flowing back of water upon the land of another is such an act as entitles the individual to his action. *Stout v. McAdam*, 3 Ill., 2 Scam., 67. *Hill v. Ward*, 7 Ill., 2 Gilman, 285. *Miller v. Stowman*, 26 Ind., 143. Cooley on Torts, 285. Angel on Water-courses, 7th ed., secs. 344, 481, 482. *McCalmont v. Whittaker*, 3 Rawle, 84. Mills on Eminent Domain, sec. 290.

3. In this case it clearly appears, and the court finds that the plaintiff filed the first application for the writ of *ad quod damnum*, that all the intermediate steps have been taken, and a judgment rendered con-

firming the plaintiff's mill and dam.    It will probably
be insisted that the defendant has expended large
sums of money in the erection of his mill and dam,
which will be greatly diminished in value if the plain-
tiff succeed in this case.    In reply we say the defend-
ant made these improvements with his eyes open.    He
was in no manner deceived.    He knew that the plain-
tiff owned the land which he now claims.    He knew
that the plaintiff claimed there was a mill site on it.
He also knew or should have known that if he raised
the water to the necessary height to run his mill he
would flood the plaintiff's land and destroy his mill
site, and this the defendant admits he has done.    If
the defendant wished to flood the plaintiff's land he
should have proceeded legally to have obtained that
right, and not undertaken to deprive him of his mill
site by force.    The law should not permit a person
to gain any advantage by an unlawful act, especially
as against one who is endeavoring to establish his rights
in a legal way.    *Hendricks v. Johnson,* 6 Porter, Ala.,
472.    9 U. S. Digest, 58, sec. 1.    *Askin v. Davis,* 14
Kan., 144.

4.    The right to plaintiff's dam having been duly
established by a decree of the court, and the flooding
of his dam and mill site being admitted, there can no
longer be any doubt as to the plaintiff's right to have
his property protected by injunction.    The wrongful
act in this case being admitted, the plaintiff stands in
at least as good a situation to demand equitable relief
as he would had the wrongful act been denied and es-
tablished in a court of law.    *Quackenbush v. Van Ri-*
*per,* 3 N. J., 350.    *Hammon v. Fuller,* 1 Paige, N. Y.,
197.    *Bernis v. Upham,* 13 Pick., 169.    *Crittenden v.*
*Field,* 8 Gray, 621.    *Shannon v. The State,* 18 Wis.,
604.    Angel on Watercourses, sec. 444.    *Kirkendall v.*
*Hunt,* 4 Kan., 514.

*Edward Bates* and *Mason & Whedon*, for appellee.

The statute evidently leaves it optional with the person desirous of building a mill to first begin his mill and dam, and then sue out a writ of *ad quod damnum*, or to first sue out his writ of *ad quod damnum;* evidently like the Massachusetts and Maine and Rhode Island acts, giving priority of right to the person who first occupies his mill site with *bona fide* improvements actually commenced. The doctrine of equitable estoppel, when one has stood by in silence and seen another incur great expense in erecting a dam and mill, rests upon the idea of estoppel, whereby equity treats an executed license as giving an absolute right because the parties cannot be restored in *statu quo* if it is revoked. It is limited to cases where something has been done under the license, and it is impossible to restore the license *in statu quo*, and this doctrine is sustained in Pennsylvania, Iowa, and Indiana. *Huff v. McCauley*, 53 Penn. St., 209. *Wickersham v. Orr*, 7 Iowa, 206. *Snowden v. Wilas*, 19 Ind., 14. The defendant built his mill race and dam first in point of time; he commenced his proceedings in *ad quod damnum* shortly after the plaintiff commenced his, and an amended writ of *ad quod damnum* is entitled to the same priority as the writ first filed. All parties are presumed to know of the application filed, and must act accordingly. *Henderson v. Johnson*, 6 Port., 472. *Hook v. Smith*, 6 Mo., 225. *Fulton v. Chicopee*, 16 Gray, 43. The first dam erected, or in process of erection, has the precedence, and cannot be interfered with by one subsequently erected. *Bigelow v. Newell*, 10 Pick., 345. *Miller v. Stowman*, 26 Ind., 143. The mill must be built, and if no mill is erected another mill may be erected so as to interfere with a dam which has no

mill attached.    *Fitch ·v. Stevens*, 4 Metc., 416.    Mills on Eminent Domain, sec. 304.

MAXWELL, CH. J.

This is an action for a perpetual injunction. The prayer of the petition is to enjoin the defendant from erecting a dam across the West Blue river, upon his own land, to such a height as to cause the water to flow back on the plaintiff's land. On the trial of the cause in the court below judgment was rendered in favor of the defendant dismissing the action. The plaintiff appeals to this court.

The court below made special findings of fact, as follows: " The court do find that the plaintiff, B. F. Nosser, is the owner of the west half, of north-west quarter, section nine, township nine north, of range two west in York county; and that the defendant Charles Seeley is the owner of the south-east quarter of section six, township nine north, of range two west in York county; that the West Blue river flows from west to east through both tracts of land, first through the lands of B. F. Nosser, plaintiff, then through state school land, and then through the lands of defendant, Charles Seeley; that on the fifteenth day of June, 1878, said Seeley began the building of a mill house and dam on his said land, and continued to prosecute his enterprise without unnecessary delay until on or about March 25, 1879, at which time the same was fully complete and began operation; that at said last date the mill was and at this time is of the value of from twelve to fifteen thousand dollars; that on the sixteenth day of October, 1878, Seeley (the defendant) began an action in this court under chapter 44 of the General Statutes, entitled " Mills and Mill Dams," and that said action is now pending in court undetermined.

The court further finds that said dam so erected by said Seeley backs the water of said stream on to the land of said Nosser, and increases the depth of the water at the point claimed by said Nosser as a mill site.

The court further finds that there was no ford or road across said stream on the land of Nosser, but that at certain seasons he could pass from one side of the stream to the other on his own land; that by reason of the increased depth of the stream he cannot now do so.

The court further finds that by reason of the flooding of the plaintiff's land his young timber is injured, but to what amount the court is unable to find.

The court further finds that on the first day of August, 1878, said Nosser began an action in this court under chapter 44 of the general statutes to obtain leave to erect and maintain a mill dam as alleged in his petition herein, and that on the twenty-ninth day of January, 1879, judgment was entered granting him leave as prayed for. The court further finds that the plaintiff Nosser has done nothing toward the permanent improvement of his mill site, either in the building of a mill house, purchasing machinery, or making a dam. The court finds that on or about the first day of August, 1878, the defendant Seeley had expended the sum of $4,000 on his mill and mill property; that from the time Seeley began work on his mill until on or about the said first day of August, 1878, the said Nosser well knew that Seeley was expending large sums of money on said mill; that Nosser knew that, should said mill and dam be completed, it would back the water on to his (Nosser's) land, so as aforesaid, but, notwithstanding such knowledge on the part of Nosser, he allowed said Seeley to proceed without objection; that said Nosser solicited said Seeley to

32

employ him in the construction of the property which he now seeks to have torn down; that on the seventeenth day of October, 1878, Nosser begun the construction of a temporary dam across said stream at the point claimed by him as a mill site; that said structure was wholly unfit for a permanent dam for mill purposes; that the same was not begun nor prosecuted in good faith for the purpose of a dam, but for the purpose of harassing and annoying the said Seeley."

Many of these findings of fact are objected to by the plaintiff because not sustained by the evidence; but after a careful examination of the testimony, we find that every material finding—every fact upon which the plaintiff could maintain the action, if at all—is sustained by a clear preponderance of the testimony.

The question to be determined therefore, is the right of the plaintiff, upon the facts found, to maintain the action.

The act relating to mills and mill dams (Gen. Stat., 472) provides that "if any person desiring to erect a dam across any water-course, for the purpose of building a water, grist, saw, carding, or fulling mill, or of erecting any machinery to be propelled by water, be the owner of the lands on which he desires to build such mill or erect such machinery, on one side of such water-course and not the lands on the opposite side against or upon which he would abut his dam; or, if any person be the owner of the lands on which he desires to erect any such mill or machinery on both sides of such water-course, or if any such person shall have erected such mill and mill-dam on his own lands, he may file a petition for leave to build or continue such mill-dam, and for a writ of *ad quod damnum* in the district court of the county where such lands lie, against the owners or proprietors of the lands above and below

such dam, which are or probably will be overflowed or injured thereby, or against or upon which he may desire to abut his dam."

The act provides for "service of notice upon the defendants, for drawing a jury to determine the damages sustained by each of them, and whether the mansion-house of any such defendant or defendants, or the offices, curtilages, or gardens thereunto immediately belonging, will be overflowed or injured. To inquire in what degree fish of passage or ordinary navigation will be obstructed, and whether, in their opinion, the health of the neighborhood will be damaged by the stagnation of the water. Whether and by what means any such obstruction, annoyance or injury can be prevented. Whether such mill is or will be of public utility."

Section 16 provides that "when any person may have built a mill or other dam, whereby the water of any river, creek, run, or spring may be rendered stagnant, or any lands may be overflowed or injured thereby, any person or any number of persons interested therein, or who may be damaged by the stagnation or overflowing of said water, or otherwise, may file a petition against the owner of such mill-dam for such writ, and like proceedings shall be had *mutatis mutandis* as where the owner of the mill-dam so built shall file a petition. But such owner shall have ten days' notice of the filing of the petition."

It is very clear the legislature intended that the statutory mode of ascertaining damages should be exclusive in all cases falling within the provisions of the statute. In such cases the land-owner may institute proceedings to have the damages sustained by him assessed, which, if not paid, an action for an injunction would undoubtedly lie. *Ray v. A. & N. R. R. Co.*, 4 Neb., 440. *O. & N. W. R. R. v. Menk*, id., 24. But

not in the first instance. The law favors diligence, and gives priority to the person who, in good faith, first commences the erection of a mill or dam. But the mill is the principal thing, the dam a mere incident. The act is for the encouragement of mills—to utilize the water power of the streams of the state. In this case the defendant commenced the erection of his mill in June, 1878, and continued to work on the same until its completion in March, 1879. The plaintiff made no objection until the defendant had expended a considerable sum of money. Nor does it appear that he intends building a mill. He has purchased none of the material nor taken any steps toward erecting a mill, except commencing a dam, which is shown to have been entirely insufficient. The defendant has erected a mill and is operating the same, and has instituted proceedings to have the plaintiff's damages assessed. Under such circumstances, the plaintiff cannot maintain an action to enjoin the defendant from flowing the water back upon his unoccupied mill site. The judgment of the district court is clearly right and is affirmed.

JUDGMENT AFFIRMED.