FRANK GROSS ET AL., APPELLEES, V. STEPHEN H. JONES, APPELLANT.

FILED SEPTEMBER 25, 1909. No. 15,746.

1. **Eminent Domain:** FLOWAGE OF LAND: ABANDONMENT OF RIGHT. A petitioner in *ad quod damnum* proceedings who owns the land on each side of a watercourse at the point where he proposes to construct and maintain a dam does not by a judgment in his favor and payment of the damages assessed acquire the right in perpetuity to flow the lands of upper riparian owners, but secures a

privilege which may be lost by abandonment or nonuser for an unreasonable length of time.

2. Waters: FLOWAGE OF LAND: PRESCRIPTION. A miller may also by uninterrupted, continuous and adverse possession and user obtain said right of flowage.

3. Eminent Domain: FLOWAGE OF LAND: PRESCRIPTION. If the exercise of that privilege is commenced by virtue of *ad quod damnum* proceedings, possession and use alone, no matter how long continued, will not vest the miller with any title, privilege or right other than those acquired in said proceedings.

4. ———: ———: ABANDONMENT OF RIGHT. In a contest between upper riparian owners and the proprietor of a mill site over the latter's right to reconstruct a dam that has been washed away, the question of whether or not there has been a nonuser of a privilege acquired by condemnation proceedings for such a length of time as will amount to an abandonment of the right of flowage is one of fact, to be determined in each particular case upon the evidence before the court.

5. ———: ———: ———. In such an action the district court was justified in finding that the owner of the mill site had abandoned his right to flow the lands of the upper riparian owners for the purpose of maintaining a public gristmill, where it appeared from the evidence that the principal mill had been dismantled, and, with its machinery, removed from the mill site ten years next preceding the institution of the suit; that for eight of those years an occasional grist of a few bushels of buckwheat, rye, corn or oats had been ground in an ancient building on the premises; that the public was not served by the operation of said mill, which for months at a time was not used at all; that the owner of the mill site maintained the mill pond principally to procure ice therefrom; and that two years before the commencement of the suit the dam was washed away, and no steps whatever had been taken during that time to reconstruct it.

6. Injunction: CONSTRUCTION OF DAM. It was error, however, for the court to absolutely enjoin the owner of the mill site from constructing said dam, but the injunction should continue only until by *ad quod damnum* proceedings and the payment of damages assessed therein he had established his right to construct and maintain the dam.

APPEAL from the district court for Saunders county: ARTHUR J. EVANS, JUDGE. *Affirmed as modified.*

*J. H. Barry,* for appellant.

*Simpson & Good, contra.*

ROOT, J.

In 1871 the then owners of a tract of land crossed by the Wahoo creek by *ad quod dammum* proceedings in the district court for Saunders county acquired the right to flow the lands of upper proprietors so far as might be necessary in constructing and maintaining a dam 20 feet in height across said stream and upon the land of the petitioners. A dam and gristmill were constructed, and the mill thereafter operated. In 1887 a flouring-mill with modern appliances was built upon said mill site, and subsequently operated; the original mill being used for grinding corn and oats. In 1893 the last mill constructed was dismantled, and, with the machinery, removed. Subsequently defendant became the owner of the mill site and the mill first constructed. At that time the dam had been washed away, but was rebuilt by defendant about 18 months after his purchase. Thereafter defendant occasionally operated the mill on a very small scale, and cut ice from the millpond for his ice business in Wahoo. In May, 1903, the dam was again washed away, and in May or June of 1905 defendant was preparing to reconstruct it, when this action for an injunction was instituted by the upper riparian owners. The court found generally for plaintiffs, and perpetually enjoined defendant from building, constructing and maintaining any dam across the Wahoo creek upon his said land, and he appeals.

1. While the condemnation proceedings were regular, they did not vest defendant or his grantors with the right of flowage in perpetuity, but merely the privilege of exercising that power until the easement was extinguished in some lawful manner. *Pratt v. Brown,* 3 Wis. 532; *Curtiss v. Smith,* 35 Conn. 156; *French v. Braintree Mfg. Co.,* 40 Mass. 216; *Nosser v. Seeley,* 10 Neb. 460. A right of flowage thus acquired may be lost by abandonment or non-

user for an unreasonable length of time. *French v. Braintree Mfg. Co., supra.* Whether the nonuser has continued for an unreasonable period in a particular case will be ascertained from the surrounding facts and circumstances. No arbitrary rule can safely be followed. If the right of flowage has been acquired by deed or adverse enjoyment, then it may be conceded that nonuser for less than ten years will not be held an unreasonable delay. *Agnew v. City of Pawnee City,* 79 Neb. 603. But a right or easement by adverse enjoyment will not be created unless the use has been adverse to the owner of the servient estate for ten continuous years. *Johnson v. Sherman County I., W-P. & I. Co.,* 63 Neb. 510. If the person enjoying the right or easement acquires it by condemnation proceedings, his possession in the first instance is in conformity with the terms of the judgment, and a continuation of that possession will not enlarge his estate, unless he intends thereby to acquire a greater interest, and knowledge of that intent is brought home to the owner of the servient estate. A defendant who pleads and proves possession by virtue of a legal title ought not to be considered an adverse occupant. *Tinkham v. Arnold,* 3 Me. 120. There is not a scintilla of evidence that defendant or any of his grantors ever, prior to the filing of the answer in this case, claimed to have other or greater rights in the premises than vested in Ray and Flor, the petitioners in condemnation. Defendant has never executed a specific release of his right of flowage nor indicated by any statement that he has abandoned it, and there remains but one question for consideration upon this branch of the case, and that is whether the facts taken altogether will justify a finding of such abandonment.

Defendant's grantors by the exercise of the power of eminent domain were granted a servitude upon the lands now owned by plaintiffs, to the end that a public gristmill operated by water power might be constructed and maintained. In the early history of this state, in common with like periods in the experience of sister common-

wealths, the law was construed liberally in the interests of the millers who manufactured foodstuffs for the community. With the evolution of transportation and steam power, the reasons underlying those decisions have largely vanished. Speculators who cling to the old mill sites and rickety, moss-covered dams to the detriment of acres of valuable, fertile land, made valueless by the overflow of water that has ceased to furnish power for the benefit of a community, must in good faith keep their franchises alive to hold the upper riparian lands in servitude. The payment of damages assessed for the benefit of the upper proprietors is not the sole consideration upon which the miller receives the right of flowage, but there is the further consideration that he shall construct, equip and operate a grist-mill for the benefit of the public. If he does not, the consideration for his grant fails, and the upper proprietors ought not to hold their lands in bondage to him.

The evidence proves to our satisfaction that defendant's real purpose in maintaining the millpond has been to furnish an ice field from whence he could procure ice for his trade. Defendant since he became the owner of the mill, and preceding the destruction of the dam in 1903, has not operated the mill with any regularity, but, on the contrary, during long and infrequent intervals of time has operated not to exceed three hours at a time. Months would pass during which the mill was not operated at all. Witnesses who frequently traveled the highway adjacent to the property testified that they never saw it in operation. One witness who passed the mill six days in the week for years only saw a team at the mill on two occasions. The infrequent grists ground consisted generally of but a few bushels of rye, buckwheat, corn or oats. The public did not patronize the mill. It is poorly equipped for practical work, and for years has ceased to be of any benefit to the public or the community in which it is situated. Taking all of these facts into consideration, and the further fact that defendant remained passive for over two

9

years subsequent to the loss of the dam in 1903, we are of opinion that the trial judge was justified in finding that defendant had abandoned the rights acquired by him from his grantors to overflow plaintiffs' land. The statute in force when this action was commenced (Comp. St. 1903, ch. 57, sec. 15) provided that if a miller who has acquired a mill site by condemnation does not commence to build his mill or dam within a year of the final judgment, or within two years does not commence to reconstruct his mill or dam, if either structure is destroyed, the mill site will revert to the original proprietor, and thereby indicates the then legislative idea of a reasonable time within which a miller must act to preserve his privileges acquired by condemnation proceedings. Defendant is not within the saving clause of the cited statute, nor the more liberal limits of the amendment thereto, laws 1905, ch. 101. The statute does not in terms apply to the case at bar, but it warrants a court in exacting the same degree of diligence on the part of the individual owning the mill site, if he asserts a right to flow the land of upper riparian owners.

2. The injunction is absolute, forbidding the reconstruction of a dam upon defendant's land. Defendant owns a mill, antiquated, but still constructed for the milling trade. He also owns the land on both sides of the creek where he proposes, and alleges that he desires, to construct a dam. He has a right to proceed under the statute to establish his right to construct and maintain the dam and operate the mill.

The judgment of the district court, therefore, is modified so as to enjoin defendant from constructing or maintaining a dam upon the land described in the petition until and unless he shall have again acquired the right so to do by *ad quod damnum* proceedings in the district court for Saunders county, and, as thus modified, the judgment is affirmed.

JUDGMENT ACCORDINGLY.

REESE, C. J., absent and not sitting.