GEORGE H. GOFF ET AL., APPELLANTS, V. ANDREW WEISS ET
AL., APPELLEES.

FILED MAY 23, 1925.   No. 24308.

1. **Drains:** INJUNCTION. *Held,* in this case, that the appellees ob-
tained from the appellants a parol license to enlarge a soil
drainage ditch through their land so that it might carry waste,
seepage and flood water from irrigated lands above, upon con-
dition that they should dig it down and clean it out to its original
depth so that it would continue to function as a soil drainage
ditch also; that having so cleaned it out and enlarged it, and
having put it into operation, a flood almost entirely filled it with
sand and gravel, and the water mainly broke through the banks
of said ditch at the northern boundary of said land and‚passed
off in another more recently constructed drainage ditch; that
thereafter, in restoring the ditch in question, appellees were
proceeding to reconstruct the same in such wise that the flow
thereof would go on a uniform grade from higher lands on the
north to the river on the south, thus raising the bottom of the
ditch so that it could no longer serve as a soil drain to appel-
lants' land, refusing at the same time to construct toe ditches
to provide for the soil drainage originally contemplated.   And
*held,* further, upon these findings of fact, that the appellants
were entitled to an injunction preventing such reconstruction.
2. **Licenses:** RESTRICTED TO GRANT.  Where one acquires a license
to go upon another's land for two particular purposes, one of

which is beneficial to the owner and is the inducement for the granting of the license, he does not thereby acquire a right to go upon said land for another purpose or for a purpose destructive of the benefit for which the owner bargained.

3. **Injunction:** Taking Land of Another. A concern which has not condemned, and which attempts to take or to damage another's land without paying the owner due compensation therefor, and without obtaining his consent, may be prevented by injunction from so proceeding; and this is so without regard to whether or not the taking or damaging of such land is for a public purpose.

APPEAL from the district court for Scotts Bluff county: P. J. Barron, Judge. *Reversed, with directions.*

*Morrow & Morrow,* for appellants.

*Ethelbert Ward, L. L. Raymond* and *Frank P. Johnson, contra.*

Heard before Morrissey, C. J., Rose, Dean, Day, Thompson and Evans, JJ., and Shepherd, District Judge.

Shepherd, District Judge.

This action in injunction was brought by the Goffs to restrain the Farmers Irrigation District and the Minatare Drainage District, together with the directors of said concerns, from reconstructing a drainage ditch through certain lands owned by the said Goffs—the S. E. ¼ of section 10, township 21, range 53, Scotts Bluff county, Nebraska. The injunction was denied and the plaintiffs appealed, their several assignments of error amounting to a complaint that the decree of the district court was contrary to the evidence and contrary to law.

The ditch was originally constructed by the Minatare company in 1915 upon verbal license from the Goffs who were desirous of having the lands in question drained. It followed the section line between sections 9 and 10 and furnished a comparatively direct course to the Platte river on the south. But it was not altogether satisfactory, particularly after waste and seepage water from above had been turned into it, and in 1917 conditions had become acute. A large amount of seepage had developed upon immense

irrigated areas to the north and was coming down the Nine-Mile canyon—the great natural drain of the region—to the vicinity of the plaintiffs' half section above described.

At that time, therefore, the defendant companies, including the United States reclamation service, were anxious to get a better outlet to the river and the Goffs were anxious to get better drainage for their land. Accordingly, when the Farmers Irrigation District proposed to enlarge the ditch, digging it down to the original depth so that it would drain said land, and widening it so that it would carry the increasing flow, the Goffs were willing, not only to permit the work, but to give whatever additional ground was necessary for the improvement. And the Minatare company was quick to consent. But when the enlargement was completed and operation was begun, the ditch filled up, the banks were frequently broken and maintenance proved difficult and expensive. For several years the companies had a great deal of trouble of this kind, and in 1923, upon the occurrence of an unusual storm, eroded material and débris came down in such quantities as to almost completely fill the ditch through the Goff lands, while the flood waters broke through the banks above and passed off to the river through an extension of the Minatare drainage ditch which had been constructed to the southeast. In the fall of the year last mentioned the companies started in with a drag line to reconstruct the north and south ditch in question, proceeding southward from above the Goff lands, and had reached a point about 100 feet from said lands when they were stopped by the restraining order of the court.

The court finds, upon examination of the record, that the ditch through the plaintiffs' land was purely a drainage ditch when it was first constructed by said Minatare company; that the defendants gained permission to enlarge it upon agreement to clean it out to its original depth, their object being to secure an outlet for flood and seepage waters which had developed, as above stated, in large quantities upon their lands to the north (some 40,000 acres lying under irrigation canals), and their belief being that by this

means they could at once accomplish their object and maintain the ditch as a soil drain for plaintiffs' land; that incidentally plaintiffs expected to profit in the premises by the partial drainage of other lands of theirs in sections 14 and 23, township 22, range 53, as well as by better soil drainage on said sections 9 and 10, township 21, range 53; that the improvement proved unsatisfactory because of floods and a tendency to fill up, as heretofore indicated; that at the time of the commencement of this suit, and for some time theretofore, the ditch had so filled with earth, sand and gravel, that the flow was largely above the level of the surrounding land; and that at that time the defendants intended, doubtless because they had determined as an engineering proposition that to maintain the ditch both as a flood-water ditch and as a soil-drainage ditch would be either impossible or too expensive, to reconstruct it in such wise as to ultimately cause its contents to flow on a uniform grade from the mouth of the canyon to the river, thus practically destroying it as a soil drainage ditch.

It is clear from the testimony that this contemplated change would not only deprive the Goff land of the soil drainage which it had originally had, but would bring additional seepage water upon it from the reconstructed ditch, for the banks of such reconstructed ditch, mainly of sand and gravel, would permit water flowing in the ditch to seep through upon the land on either side.

The contention of the defendants, much repeated and greatly insisted upon in their brief, is that this drain was a great public enterprise which had cost them upwards of $170,000, and which could not be let or hindered without great public loss. And they insist, in addition to this, that it was for the benefit of the plaintiffs, and was acquiesced in by them, and that they are now estopped to maintain their action.

But, from the findings above, the court is unable to assent to this conclusion. And while the line through plaintiffs' land, lying directly south of the mouth of the Nine-Mile canyon, is perhaps the most feasible route for a flood-water

ditch to the river, it is evident that the court should not deny the plaintiffs their right to refuse to permit a reconstruction which will make the ditch wholly a flood-water ditch instead of partly a soil drainage ditch, and will cast water upon their land instead of taking it away. It is true that the plaintiffs permitted the defendants to enlarge and deepen the ditch in question, but this was without prejudice to their right to have it maintained as a soil drainage ditch as well as a flood-water ditch, and was without prejudice to their right to complain if the character of the same was changed in the manner attempted. Nor does it matter, in considering this question, that possibly or probably the reconstruction contemplated would work to their ultimate benefit rather than to their damage. The rights of the parties are dependent upon the contract made. Plaintiffs did not give the defendants any license to change the ditch so that it should be no longer a soil drainage ditch. The companies acquired no right to a way across the land, except as was agreed.

The principle is well established in law that where one acquires a license to go upon another's land for a particular purpose, or for two particular purposes, one of which is beneficial to the owner and is the inducement for the granting of the right, he does not thereby acquire a right to go upon said land for another purpose or for a purpose destructive of the benefit for which the owner bargained. The expressions of this court in *Gross v. Jones,* 85 Neb. 77, and *Lucas v. Ashland Light, Mill & Power Co.,* 92 Neb. 550, amply support the proposition. Nor do we think that there is anything in the cases relied upon by the appellees to dispute it.

The doctrine that a parol license to enter land and construct irrigation works becomes irrevokable so long as such works are kept up, when such license has been acted upon at great expense and when the works have been used for years without objection, is beyond question in this state. But here, as has been shown, the doctrine does not apply. As stated, appellees acquired no right to use the ditch, ex-

cept in the manner agreed upon. They are attempting to use it otherwise than as contemplated when they were first permitted to go upon the land. They are seeking, in changing the ditch from a drainage and flood-water ditch to one that is a flood-water ditch alone, not only to withdraw a benefit from plaintiffs, but to impose a burden upon them. Having found that their original engineering conclusions were at fault, they now propose to withhold from the plaintiffs the soil drainage which was the inducement to plaintiffs' consent, and to bring water upon the land instead of carrying it away. The question is a question of fact upon this phase of the case, which we determine adversely to the appellees, entertaining no doubt from our examination of the record that it was not their intention to clean out the ditch to its original depth and to so maintain it.

If, with a full knowledge of the plan of the defendants, the plaintiffs had permitted them to go upon their lands in 1923 and to construct and operate according to their plan, they would have been guilty of laches. The evidence, however, proves that as soon as they were informed in regard to the same—only a day or two before the bringing of this suit—they made outspoken objection and acted without delay.

In the federal case of *Bannse v. Northern P. R. Co.*, 205 Fed. 328, in which injunction was denied, the defendants see a controlling likeness to the case at bar. It does not so impress the court. There, the plaintiff, whose rights were invaded as to an unproductive two acres of his farm, stood inactive while the railroad company, in improving its roadbed, spent $33,000 to straighten a stream, and then began an action for a mandatory injunction requiring the company to undo its work at an additional expense of $78,000. The court said in its opinion that, while the plaintiff had told the company to keep off at the outset, he must nevertheless find his remedy in damages, expressly assigning as a reason for its holding that he had taken no legal steps to prevent the work. Here, the plaintiffs promptly brought the action usually employed when the

taking of property without due compensation is attempted. Plaintiffs are not to be charged with laches, as measured by this case or by any of those cited in the brief of their adversaries.

It is urged that in any event the trial court was right in refusing the injunction, and that plaintiffs should be relegated to their action in damages. This seems doubtful. When they learned the facts, an action for damages was scarcely available to them. Defendants had not yet entered. Plaintiffs had not yet been damaged. And if they had waited, would the remedy have been adequate? Certainly, had they mutely permitted the reconstruction to proceed upon the plan stated by defendants' engineer, they would have been charged with acquiescence, and embarrassed in any damage suit prosecuted for their relief.

We have given careful attention to the cases cited by the appellees. Those from Nebraska do not, in our opinion, support their contention, some of them being cases involving disputes as to the ownership and possession of real property which were readily determinable by ejectment and other actions at law, and others being cases respecting title to office and maintenance of disorderly places which should have been dealt with by *quo warranto* and under the criminal law. Appellees cite no authority to convince us that the injury threatened was reparable by resort to a law proceeding.

On the other hand, if we are correct in our findings of fact, this case involves a taking or a damaging of private property without just compensation, and presents a situation peculiarly remediable by injunction. *Omaha & N. W. R. Co. v. Menk,* 4 Neb. 21; *Ray v. Atchison & N. R. Co.,* 4 Neb. 439; *Sittler v. Board of Supervisors,* 91 Neb. 111; *Gross v. Jones,* 85 Neb. 77. Not having acquired the right to use the ditch for flood water purposes to the destruction of its function as a drain for the land, the companies were attempting to take the land for a new purpose, and the principle of these cases directly applies.

As it is now, the flood waters and the seepage from the entire region are going to the river through the Nine-

Mile canyon, and thence through the Minatare Drainage Company's ditch to the southeast. Though this may be less desirable than to convey the said waters by the more direct route through the plaintiff's lands, it is operative, and it is claimed by many to be entirely practicable. We do not doubt, though we do not decide, that it is within the power of the defendants, by appropriate proceedings, to acquire or condemn the right of way for a flood-water ditch through plaintiff's land. But upon the record as it stands, and upon the findings which the court is constrained to make from the evidence, the plaintiffs are entitled to their injunction, and the judgment of the district court must be, and is, reversed. The case is remanded to the district court, with instructions to enter a judgment in accordance with this opinion.

REVERSED, WITH DIRECTIONS.

Note—See Drains, 19 C. J. sec. 153; Licenses, 37 C. J. sec. 184; Eminent Domain, 20 C. J. secs. 532, 533.